UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY MARSH, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:13-cv-00707-JMS-DKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| *Acting Commissioner of the* | ) | |
| *Social Security Administration*, | ) | |
|     *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Mary Marsh applied for supplemental security income from the Social Security Administration on April 22, 2010, alleging a disability onset date of March 20, 2010. [Filing No. 13-5, at ECF p. 2.] After a series of administrative proceedings and appeals, including a hearing in November 2011 before Administrative Law Judge ("ALJ") Stephen E. Davis, [Filing No. 13-2, at ECF pp. 36-53], the ALJ issued a finding on February 9, 2012, that Ms. Marsh was not entitled to supplemental security income, [Filing No. 13-2, at ECF pp. 22-30]. The Appeals Council denied Ms. Marsh's timely request for review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. [Filing No. 13-2, at ECF pp. 2-8.] Ms. Marsh then filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), requesting that the Court review the ALJ's denial. [Filing No. 1.]

### I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review,

"[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise, the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [she] perform h[er] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e),(g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## II.
### BACKGROUND

Ms. Marsh was thirty-three years old at the time of her disability application on April 22, 2010. [Filing No. 13-2, at ECF p. 39.] She has a seventh grade education and was enrolled in special education classes during her time in school. [Filing No. 13-2, at ECF p. 51.] Ms. Marsh is unmarried and has five children, who range in age from one to sixteen years old. [Filing No. 13-2, at ECF pp. 39-40.] She has never held a job for more than a couple of months. [Filing No. 13-2, at ECF p. 40.] Her last job was a cashier position at Wendy's. [Filing No. 13-2, at ECF p. 40.] Ms. Marsh's alleged onset date is March 20, 2010, [Filing No. 13-5, at ECF p. 2], and she claims she is disabled for a variety of impairments which will be discussed as necessary below.[1]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on February 9, 2012. [Filing No. 13-2, at ECF pp. 22-30.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Marsh has not engaged in substantial gainful activity[2] since April 22, 2010, the application date. [Filing No. 13-2, at ECF p. 24.]

- At Step Two, the ALJ found that Ms. Marsh suffered from the severe impairments of a seizure disorder and borderline intellectual functioning.[3] [Filing No. 13-2, at ECF p. 24.]

- At Step Three, the ALJ found that Ms. Marsh did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 13-2, at ECF pp. 24-27.] The ALJ concluded that

---

[1] Ms. Marsh detailed the pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because the facts implicate sensitive and otherwise confidential information concerning Ms. Marsh, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[3] Ms. Marsh's arguments on appeal relate only to her mental impairment, and not to her physical impairment of a seizure disorder. Accordingly, the Court's discussion is limited to her mental impairment.

> Ms. Marsh had the RFC to perform "a full range of work at all exertional levels" with the following nonexertional limitations: "no climbing ladders, ropes or scaffolds and no work around hazards such as dangerous moving machinery or unprotected heights. The work should involve only simple, repetitive tasks." [Filing No. 13-2, at ECF p. 27.]

- At Step Four, the ALJ found that Ms. Marsh was not able to perform any past relevant work. [Filing No. 13-2, at ECF p. 29.]

- Finally, at Step Five, considering Ms. Marsh's age, education, work experience, RFC, and the Medical-Vocational Guidelines, 20 CFR Part 404, Subpt. P, App. 2, the ALJ determined that jobs existed in the national economy that Ms. Marsh could perform. [Filing No. 13-2, at ECF p. 29.]

Based on these findings, the ALJ concluded that Ms. Marsh was not entitled to receive supplemental security income. [Filing No. 13-2, at ECF p. 30.] Ms. Marsh requested that the Appeals Council review the ALJ's decision, and on February 26, 2013, the Appeals Council denied Ms. Marsh's request for review. [Filing No. 13-2, at ECF pp. 2-5.] Accordingly, the Appeals Council's decision became the final decision of the Commissioner for the purposes of judicial review.

### III.
### DISCUSSION

Ms. Marsh raises two arguments on appeal: (1) that the ALJ erred in not using a vocational expert at Step Five to determine the jobs she can perform, [Filing No. 15, at ECF pp. 11-14]; and (2) that the ALJ erred in not performing a thorough analysis at Step Three, including building a logical bridge, in determining that Ms. Marsh has borderline intellectual functioning instead of mild mental retardation, which qualifies as a disability under Listing 12.05(C), [Filing No. 15, at ECF pp. 14-17]. The Court will first address the issue of whether Ms. Marsh meets or equals Listing 12.05(C).

### A. Step Three Analysis

Ms. Marsh argues that the evidence in the record supports a finding that she meets the requirements in Listing 12.05(C) for mild mental retardation. [Filing No. 15, at ECF pp. 14-16.] She also argues that the ALJ failed to build a logical bridge from the evidence to his conclusion in his Step Three determination that Ms. Marsh has borderline intellectual functioning. [Filing No. 15, at ECF pp. 16-17.]

The Commissioner responds by arguing: (1) that substantial evidence supports the ALJ's conclusion that Ms. Marsh does not meet or equal Listing 12.05(C), [Filing No. 23, at ECF pp. 3-5.]; (2) the Court should defer to the ALJ's conclusion since he clearly relied on medical opinion evidence questioning the validity of Ms. Marsh's qualifying IQ score, [Filing No. 23, at ECF p. 5]; and (3) even if the Court finds the ALJ erred in omitting a direct discussion of Listing 12.05(C), it was harmless error, [Filing No. 23, at ECF p. 6].

Ms. Marsh argues on reply that the ALJ did not articulate reasons for his reliance on one medical expert over another in determining Ms. Marsh's mental impairment and that the Commissioner cannot provide those reasons after the ALJ's decision has been issued. [Filing No. 24, at ECF pp. 1-2.] Further, Ms. Marsh argues it is not harmless error for the ALJ to fail to consider whether she qualifies for disability under Listing 12.05(C) because there is sufficient evidence in the record that was not properly considered or addressed by the ALJ that would show she meets the criteria for being mildly mentally retarded. [Filing No. 24, at ECF pp. 3-4.]

> 1. *There Is Adequate Evidence in the Record to Consider Qualification Under Listing 12.05(C)*

The Code of Federal Regulations provides that the Social Security Administration "will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the dura-

tion requirement. . ." 20 C.F.R. § 416.925(c)(3). The listing for mental retardation, Listing 12.05, contains an initial paragraph which lays out the diagnostic description of mental retardation plus four separate criteria (paragraphs A through D). *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00. In order to meet Listing 12.05, a claimant must have an impairment that meets the four requirements of that Listing. *See Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir. 2007) (*citing* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05; *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)).

The Seventh Circuit Court of Appeals summarized the requirements for a finding of mental retardation under Listing 12.05(C) as follows: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins*, 226 Fed. Appx. at 605 (citations omitted). The term "deficits in adaptive functioning," the second of the four requirements, "denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Text Revision (DSMIV—TR) 42 (4th ed. 2000)).

A variety of mental and psychological testing conducted before Ms. Marsh was 22 years old suggests that she has significant subaverage general intellectual functioning, meeting the first and second requirements of Listing 12.05(C). A 1990 psychological test shows Ms. Marsh's intellectual ability fell somewhere between the mildly mentally handicapped and borderline range. [Filing No. 13-7, at ECF p. 16.] Results from the Woodcock-Johnson Psycho-Educational Battery Test, administered in 1990 when Ms. Marsh was in fifth grade, show Ms. Marsh had the

reading grade level equivalent of 3.3, a math grade level of 3.2, and a writing grade level of 3.0. [Filing No. 13-7, at ECF p. 17.] Additionally, the Peabody Picture Vocabulary Test-Revised, also administered in 1990, showed her receptive language as "significantly below average" and noted that she had "not developed the vocabulary to accurately understand what she hears in a classroom." [Filing No. 13-7, at ECF p. 18.] At that time, Ms. Marsh also was in special education classes due to a mild mental handicap. [Filing No. 13-7, at ECF p. 6.]

Moreover, Ms. Marsh's June 2010 IQ test result meets the third requirement of Listing 12.05(C) because her full scale IQ was measured to be 67. [Filing No. 13-7, at ECF p. 111.] Furthermore, the ALJ's conclusion that Ms. Marsh has a severe physical impairment because of her seizure disorder suggests she meets the fourth requirement of Listing 12.05(C). [Filing No. 13-2, at ECF p. 24.] Overall, the Court finds there is adequate evidence in the record such that the ALJ should have formally considered whether Ms. Marsh met Listing 12.05(C).

*2. There Is No Logical Bridge Between the Evidence and the ALJ's Conclusion*

Ms. Marsh argues that the ALJ failed to build a logical bridge in his analysis of a mental impairment under Step Three because he did not articulate his reasons for giving more weight to one state agency psychological expert's opinion over a conflicting opinion from Dr. Alfred Barrow, [Filing No. 24, at ECF pp. 1-3], he did not explain why he relied on her March 2008 IQ test results over her June 2010 qualifying IQ test results, [Filing No. 15, at ECF p. 16], and he did not state why other evidence in the record, such as being in special education classes due to diagnosis of mild mental retardation, shows borderline intellectual functioning instead of mild mental retardation, [Filing No. 15, at ECF p. 16].

At Step Three of Ms. Marsh's evaluation, the ALJ found that Ms. Marsh failed to satisfy the criteria set forth in Listing 12.02 for "Organic Mental Disorders." [Filing No. 13-2, at ECF

p. 25.] In order to meet the requirements in Listing 12.02, one must either satisfy both the requirements in subparts A and B or fulfill the requirements of subpart C. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.02. The ALJ first looked to whether Ms. Marsh met the criteria in subpart B, concluded no, and then determined whether she met subpart C requirements. [Filing No. 13-2, at ECF p. 25.] Under subpart B, a claimant must exhibit two of the following impairments:

> 1.Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.02(B). The ALJ determined that Ms. Marsh did not meet the requirements of subpart B because she "does not have more than a mild restriction in her activities of daily living and ability to function socially, but has moderate limitation in her ability to maintain concentration, persistence or pace. She has had no episodes of decompensation." [Filing No. 13-2, at ECF p. 26.] Because Ms. Marsh's mental impairment was not found to meet two of the four impairments in subpart B, the ALJ then assessed whether Ms. Marsh qualified for Listing 12.02 under subpart C. [Filing No. 13-2, at ECF p. 26.] In order to meet the requirements of subpart C, a claimant must have a:

> Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.02(C). The ALJ determined that Ms. Marsh did not meet the requirements of subpart C because her mental impairments do not affect her in such a way to cause her to decompensate after minimally increasing her mental demands or prevent her from functioning outside a highly supportive living arrangement. [Filing No. 13-2, at ECF p. 26.]

In his overall assessment of Ms. Marsh's mental impairment, the ALJ noted that:

- Ms. Marsh had mild restrictions in her activities of daily living;
- She had mild restrictions in her ability to function socially;
- She had moderate limitations with concentration, persistence, and pace;
- She had no episodes of decompensation;
- She had received special education services and is limited intellectually;
- She had an IQ of 67 when tested by Dr. Barrow in June 2010; and
- She had been diagnosed by Dr. Barrow as having an adjustment disorder with depressed features and mild mental retardation.

[Filing No. 13-2, at ECF p. 26.]

When considering a claimant's case record, "[t]he ALJ is not required to mention every piece of evidence" in the record. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). However, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled." *Id.* (citations omitted). Such an explanation is missing from the ALJ's opinion.

Although the ALJ mentioned the above facts, some of which suggest that Ms. Marsh is mildly mentally retarded, his ultimate conclusion that Ms. Marsh has borderline intellectual functioning rather than mild mental retardation is explained in one sentence: "State agency psychological consultants found the claimant had a severe mental impairment and I agree with their as-

sessment." [Filing No. 13-2, at ECF p. 26.]  That sentence is not enough to explain how the ALJ arrived at his conclusion or why he rejected contrary evidence suggesting a more severe mental impairment, such as Ms. Marsh's June 2010 IQ score of 67 and diagnosis by Dr. Barrow as "mildly mentally retarded."[4]  [Filing No. 13-2, at ECF p. 26.]  Furthermore, the ALJ's statement is confusing because it suggests that *all* state agency psychological consultants found Ms. Marsh to be severely mentally impaired.  However, there were inconsistent state agency psychological consultants' opinions because at least Dr. Barrow, to whom the Disability Determination Office of the Social Security Department for the State of Indiana referred Ms. Marsh in June 2010, diagnosed Ms. Marsh as mildly mentally retarded.  [Filing No. 13-7, at ECF p. 105.]  Therefore, the ALJ's stated reliance on state agency psychological consultants to conclude she has a severe mental impairment is confusing and in need of an explanation and logical bridge.

The Court finds that the ALJ ignored significant evidence that went against his conclusion of borderline intellectual functioning.  His failure to discuss such contrary evidence built neither an accurate or logical bridge to his conclusion.  Although an ALJ may give greater weight to some consultative opinions over others, [*see* 20 C.F.R. § 404.1527], here, the ALJ did not explain why the opinions of certain consultative psychologists were entitled to greater weight than those of consultative psychologist Dr. Barrow who administered the June 2010 IQ test and diagnosed Ms. Marsh as mildly mentally retarded.

---

[4] In his response, the Commissioner discussed several items from state-agency psychological consultant Dr. Lovko's Mental Residual Functional Capacity Assessment which explained why Dr. Lovko found it "more credible" that Ms. Marsh was borderline intellectual functioning rather than mildly mentally retarded.  [Filing No. 23, at ECF p. 4.]  However, the ALJ did not discuss these items, and the Court must only consider the ALJ's explanation for his decision.  *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).  ("We have made clear that what matters are the reasons articulated *by the ALJ*" (emphasis in original)).

### 3. The ALJ's Failure to Consider Listing 12.05(C) Was Not Harmless Error

Ms. Marsh argues that the ALJ's failure to discuss whether she meets Listing 12.05(C) is not harmless error because it prevented her from qualifying for disability as mildly mentally retarded. [Filing No. 24, at ECF p. 3.] The Commissioner argues that although the ALJ was "terse" in his reasoning, he made clear he was relying on and incorporating the opinions of the state-agency psychological consultants, and specifically Dr. Ken Lovko's assessment, to determine that Ms. Marsh's IQ score of 67 was invalid, and there is nothing to suggest that the ALJ would decide differently on remand. [Filing No. 23, at ECF pp. 3-6.] In her reply, Ms. Marsh argues that the Commissioner's *post hoc* reliance on Dr. Lovko's reasoning for invalidating Ms. Marsh's June 2010 IQ score violates the *Chenery* doctrine and cannot be considered because the Commissioner can only rely on reasoning set forth by the ALJ. [Filing No. 24, at ECF pp. 1-2 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).]

The harmless error doctrine is "applicable to judicial review of administrative decisions," *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Under harmless error review, the Court can affirm the agency's decision "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Id.*; *see also Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013). With regard to the agency's decision, the *Chenery* doctrine precludes the Commissioner from "defend[ing] the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012).

In reviewing the ALJ's decision for harmless error the Court must determine if the ALJ's determination of borderline intellectual functioning would remain unchanged had the ALJ properly considered whether Ms. Marsh qualifies for mild mental retardation under Listing

12.05(C). As discussed above, the ALJ failed to build a logical bridge between the evidence and his conclusions regarding the level of Ms. Marsh's mental impairment. With this logical bridge missing, the Court is unable to determine with great confidence that the ALJ's decision would remain the same.

Because the ALJ failed to explain how he arrived at his conclusion that Ms. Marsh has borderline intellectual functioning, and specifically did not show why the June 2010 IQ test and diagnosis of mild mental retardation by Dr. Barrow were invalid or to be given less weight than Dr. Lovko's consultative opinion, the case must be remanded for review and further development of that mental impairment determination.

### B. Vocational Expert

Ms. Marsh argues that the ALJ should have solicited the opinion of a vocational expert to determine the jobs in the national economy that she can still perform despite her mental, postural, and environmental limitations. [Filing No. 15, at ECF pp. 11-14.] The ALJ found that Ms. Marsh had the RFC to perform work at all exertional levels; however, she was specifically precluded from work involving climbing ladders, ropes, or scaffolds, and work around dangerous moving machinery and unprotected heights. [Filing No. 13-2, at ECF p. 27.] Further, she was restricted to work involving only simple, repetitive tasks. [Filing No. 13-2, at ECF p. 27.] Despite those limitations, the ALJ relied on the medical-vocational rules (the "grid")[5] to find Ms. Marsh capable of working in the national economy. [Filing No. 13-2, at ECF p. 29.] Ms. Marsh challenges the use of the grid in the face of such nonexertional limitations. Instead, she argues,

---

[5] The grid is a chart that classifies a claimant as disabled or not, based on the claimant's RFC, which is based on strength, age, prior work experience, and education. It specifically provides for the case where the individual has nonexertional complaints by requiring that the ALJ consider the nonexertional impairment to see if the individual's work capacity is further diminished than the grid otherwise would indicate. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00 (e)(2).

the ALJ should have called a vocational expert to determine how her combination of nonexertional limitations would affect the availability of work for her in the national economy. [Filing No. 15, at ECF p. 14.]

In response, the Commissioner argues that the use of a vocational expert was not necessary here because the ALJ relied on Social Security Rulings ("SSR") 85-15 and 83-14 to conclude Ms. Marsh's limitations had "little or no effect on the occupational base of unskilled work at all exertional levels." [Filing No. 23, at ECF p. 8.]

Generally, an ALJ may use the grid when there is evidence sufficient to "persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Clark v. Sullivan*, 891 F.2d 175, 179 (7th Cir. 1989) (*citing Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir. 1986)). However, "in cases where a nonexertional limitation might substantially reduce a range of work an individual can perform, the ALJ must consult a vocational expert." *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). *See also Lippart v. Barnhart*, 63 Fed. Appx. 260, 266 (7th Cir. 2003) (an ALJ may not rely solely on the grid when a claimant has a nonexertional limitation that "might substantially reduce a range of work an individual can perform.")

In this case, Ms. Marsh's combination of nonexertional limitations, which affect the kind of environment she can work in and restrict the types of tasks she can perform, would likely substantially reduce her range of work. Accordingly, it was unreasonable for the ALJ to rely solely on the grid and not to consult with a vocational expert.

Even though the Commissioner argues the ALJ cited SSRs 83-14 and 85-15 to conclude Ms. Marsh's nonexertional limitations had little to no effect on her potential job base, the ALJ did not provide any explanation of thought or application of concepts from either of those SSRs.

As discussed earlier, the *Chenery* doctrine precludes the Commissioner from defending the ALJ's decision on grounds the ALJ did not state. *Chenery*, 332 U.S. at 196. Moreover, the ALJ again failed to provide an accurate and logical bridge between the evidence and his conclusion that Ms. Marsh's limitations would have little to no effect on her potential job base.

Overall, because Ms. Marsh's unique combination of nonexertional limitations stemming from a seizure disorder and mental impairment might substantially reduce her range of work, it was unreasonable for the ALJ to rely on the grid alone to conclude she is not disabled because her limitations do not substantially reduce her range of work. The Court finds that the ALJ erred by not consulting with a vocational expert to determine whether Ms. Marsh could work in the national economy despite her nonexertional limitations.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **VACATES** the ALJ's decision denying Ms. Marsh benefits and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g) (sentence four). Judgment shall issue accordingly.

On remand, the ALJ should reconsider Ms. Marsh's mental impairment, particularly whether she meets Listing 12.05(C). In making that finding, the ALJ must develop a logical bridge as to why Ms. Marsh does or does not meet the mental impairment listings. Should the ALJ find she does not meet the listing requirements, the ALJ should employ a vocational expert to determine Ms. Marsh's range of work since her nonexertional limitations might substantially reduce the range of work she can perform.

**Distribution via ECF only to all counsel of record**